# McElheny et al., Appellants, *v.* McKeesport & Duquesne Bridge Co.

*Eminent domain—Measure of damages in second condemnation proceedings—Benefits of defendant's structure—Res judicata.*

Where land has been condemned for the purposes of a bridge, and the damages paid to the owner, and subsequently, owing to change in plans, additional land of the same owner is condemned, the benefits, resulting to the owner's property from the original construction of the bridge, cannot be considered in the adjustment of the damages in the second condemnation proceedings. In such case the special benefits from the construction of the bridge were settled in the original proceedings; as to them the former proceedings were res judicata; and in the second proceedings the inquiry must be limited to the damages sustained and the benefits conferred by the change in the plans, and the appropriation made necessary by such change.

*Practice, Supreme Courts—Error—Failure to print testimony.*

Where appellant has failed to print a witness's testimony in chief, the Supreme Court will not consider an assignment of error based upon objections to questions complained of on the witness's cross-examination.

*Evidence as to value of land—Competency of witness.*

In condemnation proceedings a witness who has known the property ten or fifteen years, and knew of sales of like property in the neighborhood, is competent to testify to the market value of the property condemned.

Argued Nov. 2, 1892. Appeal, No. 164, Oct. T., 1892, by plaintiffs, V. K. McElheny et al., from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1891, No. 132, on verdict for plaintiffs. Before PAXSON, C. J., STERRETT, WILLIAMS, Mc-COLLUM, MITCHELL and HEYDRICK, JJ.

Appeal from viewers in condemnation proceedings.

At the trial, before MAGEE, J., it appeared that under former proceedings defendants appropriated for an approach to their bridge a portion of the land belonging to plaintiffs. This appropriation terminated at the line of the Pittsburgh, Virginia & Charleston Railway, and on a level with the railroad. The damages were paid for at the time. A dispute subsequently arose between the railroad company and the bridge company in reference to the bridge approach terminating on a level with the railroad tracks. This dispute resulted in an arrangement by which the bridge was to be so elevated as to cross the rail-

road overhead, and for the accomplishment of that object it became necessary to appropriate additional lands of plaintiff.

J. R. Wiley, a witness for plaintiff, was asked on cross-examination : " Q. Did you not have the Dunlevy property in your hands for sale, two lots in the McElheny plan, in the early part of 1890 ? [Objected to as incompetent. Objection overruled and exception.] A. Yes, sir; in the McElheny plan. I don't remember whether it was in 1889 or 1890. Q. Don't you know as a fact that Mr. Dunlevy had these two lots, (not the property in suit,) Nos. 26 and 27, in your hands as late as July 1, 1890 ? Q. What price did you have on those two lots? Were you not authorized to sell those two lots at $400 apiece? [Objected to on the ground that it was a special sale. Objection overruled and exception.] A. I am not positive about the price, but I think it was $900, or $450 apiece." [5]

Wm. B. Rath, a witness for plaintiff, was asked on cross-examination : " Q. Then, before there was a bridge built there, what would those lots be worth ? [Testimony under objection as incompetent. Objection overruled and exception.] A. I couldn't put a price on that. Q. What price did you put on that before there was a bridge there at all? A. About the same then as now. That is, with the prospects of a bridge. By Mr. Swaney : Q. If that bridge was built there so that the street could be opened very nicely would those lots be worth any more than without the bridge ? A. Yes, sir ; they would be worth more with the bridge. Q. How much more would they be worth—$200 more ? A. Yes, sir ; $300 or $400 more. Q. If the bridge then could be made in that shape the bridge then would make the difference $300 or $400 ? A. Yes, sir." [6]

L. C. Haler, a witness for defendant, was asked : " Q. Would the location and building of that bridge there at that point on that particular property, taking into consideration that a plan of lots is laid out and a street laid off which could be opened at a 12-foot grade to the hundred and that there remains 32 acres belonging to McElheny — in your opinion, would the building of that bridge there be a benefit or a disadvantage to that remaining land ? [Objected to as incompetent. Objection overruled. Exception.] A. It is a pretty hard question for me to answer under oath. Q. I ask you if he had 32 acres here whether the bridge would be a benefit or a disadvantage ?

A. The real estate had no value, or the value is a prospective value. It would take more money to make a lot there than it would to buy one elsewhere, and consequently all the value it has is prospective. Q. Did the bridge damage its prospective value or add to it? A. Oh, it adds to the prospective. Q. In your opinion, how much does it add? A. Nearly all the value there is to it." [7]

S. O. Lowry, defendant's witness, was asked: " Q. It is in evidence here that the plan of lots as you saw laid out there was laid out in May and that this company took that piece of ground in July by appropriation ; you will see a street marked there coming down to the end of the bridge, and it is also in evidence that the street if opened would be of a grade about twelve feet to the hundred; now, in your opinion, would that tract of lots be benefited any by the bridge being built there on that particular piece of ground—by the location of the bridge? [Objected to unless the question is confined to any advantage arising by reason of the change of location of the bridge from its first location to the present one; in other words, counsel for plaintiffs objects to testimony as to general advantages which have arisen or might have arisen by reason of the construction of the highway bridge across the river into McKeesport, because the bridge was an assured fact in process of construction before the ground was appropriated by the defendant company. Objection overruled. Exception.] Q. It is in evidence here that the street can be opened with a 12-foot grade ; in your opinion, what would be the advantages or disadvantages to that property by the erection of that bridge? A. I think it would be an advantage to this plan of lots. Q. Would it be an advantage to the remaining property? A. Yes, sir. Q. In your opinion, how much benefit would it be to the 43 lots and the remainder of the 32 acres of ground there? A. Well, it might be a benefit; that depends on what I consider the lots are worth; I have not got much of an opinion of the value of any of these lots. By the Court : Can you answer the question? A. I think it would be at least $1,000 advantage." [8]

Joseph Morgan, a witness for defendant, was asked: " Q. Are you sufficiently acquainted with the value of property in that neighborhood to put a market value on this piece ? A. I think

so.    Q. Have you seen the property that was taken?    A. By comparison with other properties in the neighborhood.    Objected to on the ground that the witness has not shown sufficient knowledge to give an opinion.    Objection overruled, and exception." [9]

The same witness was asked: " Q. Have you seen the remaining property of McElheny there?    A. Yes, sir.    Q. It is in evidence that it was about 32 acres and a plan of lots laid off; in your opinion does the building of the bridge benefit or damage that remaining property?    [Objected to as before. Objection overruled, and exception.]    A. I think it benefits the property.    Q. How much?    A. About one half the valuation." [10]

James E. White, a witness for defendant, was asked: " Q. Mr. McElheny has 32 acres of ground there, and a plan of lots laid off near the end of the bridge; in your opinion would the remaining property of McElheny be benefited or damaged by the building of the bridge where it now is?"    Objected to, objection overruled and exception.    The witness testified that it would be damaged about $800. [11]

Plaintiffs' points were among others as follows :

" 3. It appearing by the record admitted in evidence, being No. 468 April [January?] Term, 1890, that there was another proceeding between the plaintiffs and defendant in this case, whereby the defendant company condemned a strip of land between the line of the Pittsburgh, Virginia & Charleston railway and the river, whereon to locate its improvement, the bridge approach, and that said proceeding ended in an award between the parties, wherein the damage sustained by reason of the location of the bridge upon such strip was considered, and the benefits which had accrued, or might accrue to the plaintiffs' property by reason of the construction and operation of a bridge across the river to McKeesport were considered, such proceedings are a bar to any allowance to the defendant in this proceeding for any benefits that might accrue by reason of the construction and operation of a bridge to McKeesport, and the jury are confined, in the allowance of benefits in this proceeding, which might or may accrue to the plaintiffs in this case, since the date of the award in the case at No 468, January Term, 1890.    *Answer:* This point is affirmed.    Any

advantages or disadvantages awarded in the proceeding at No. 468, January Term, 1890, are not to be taken as elements of advantage or disadvantage in this proceeding. You are to take into consideration only such advantages or disadvantages to plaintiffs' remaining land as arise from a bridge with its causeways built and completed as you will find it under the second appropriation." [1]

" 4. If the jury believe, from the evidence, that there was a former proceeding between the parties in this case, wherein any allowance was made and benefits given by any other jury or viewers for the proposed construction of a bridge on the plaintiffs' land into McKeesport, the defendant cannot in this proceeding be allowed any benefits which were or might have been shown or proven or taken into consideration in the former proceeding. *Answer:* This point is affirmed. You are only to consider the advantages and disadvantages of a completed structure to plaintiffs' remaining land upon the location and plans contemplated or adopted for the construction of the bridge and the causeways, under the second appropriation of plaintiffs' land." [2]

" 5. If the jury find from the evidence that the original location of the defendant's improvement, to wit, the Mifflin township end of the bridge, was at a point on the plaintiffs' land down near the railroad, and by a subsequent plan the bridge was raised to its present location, and they further find that the damages and benefits growing out of the location of said bridge at said point below the railroad were adjudicated in the proceeding referred to, No. 468, April [January?] Term, 1890, the only benefits that the plaintiffs can be charged with are those special benefits which have resulted, or which may result, to the plaintiffs' property, by reason of the change in the location of said improvement. *Answer:* This point is affirmed. Benefits or advantages which accrue to all alike from the construction of a public work or improvement are not to be taken into consideration to reduce the damage sustained by the taking of land for the contemplated improvement. The land is to be charged only with such benefits to the property as are special to the property, and not general to the neighborhood, and which are occasioned by the improvement, located and completed in accordance with the last appropriation made of plaintiffs' land." [3]

" 6. The record at No. 468, January Term, 1890, having shown a condemnation proceeding between the plaintiffs and defendant, arising out of the location of the defendant's improvement upon plaintiffs' land, the question of benefits arising from the construction of defendant's improvement to plaintiffs' land were, as a matter of law, adjudicated in that proceeding, and the defendant is only entitled in this case to any benefits happening or which might happen since that date. Benefits which might have been shown, or could have been contemplated at date of said proceedings, cannot be considered in this case. *Answer:* This point is affirmed. The proceeding at No. 468, January Term, 1890, adjudicated the question of damages and benefits in that taking land, and the construction of the improvement on that appropriation, and in the way then contemplated. But it does not preclude the consideration of the advantages and disadvantages which result to plaintiffs' land by the construction of the bridge upon a new appropriation, and on a different location and plans from those contemplated and considered in the first appropriation." [4]

The court charged in part as follows:

" It is contended by the plaintiffs, as I understand the contention, that they are entitled to recover in this proceeding the market value of the land now taken, as it had market value in July, 1890. This I take to be true, but at the same time I say that you are to take into consideration the advantages and disadvantages of a bridge and causeway to plaintiffs' lands, built upon the new appropriation with new location and new plans. The damages and benefits to plaintiffs' lands by the first location and plans are adjudicated, but not the damages and benefits to plaintiffs' lands from a new location and new plans." [12]

Verdict and judgment for plaintiffs for $800. Plaintiffs appealed.

*Errors assigned* were (1–4, 12) instructions, quoting them as above ; (5–11) rulings on evidence, quoting bills of exceptions and evidence as above.

*Isaac S. Van Voorhis,* for appellant.—The rule for assessing damages in condemnation proceedings is " just compensation," which consists of the surplus of the damages done to the

land over and above the amount of special benefit, if any, accruing to the property: Fisher v. Baden Gas Co., 138 Pa. 301.

The measure of damages is the difference between the selling value before and after the appropriation. And in adjusting this difference the advantages to be considered are such only as are special, and the disadvantages such as are actual: Sitzler v. R. R., 112 Pa. 56; Ry. v. McClusky, 110 Pa. 436.

Taking this to be the rule, the jury were bound to consider the value of the land in suit, as it was on the day it was appropriated, July 1, 1890, after the bridge was a fixed fact, partially completed, and after all the benefits had been liquidated in the previous view. " The damages must be estimated with reference to the existing deterioration : " Moyer v. Water Co., 99 Pa. 615.

The admission of this evidence misled the jury and is therefore ground for reversal: Cummings v. Williamsport, 84 Pa. 472; Reineman v. Blair, 96 Pa. 155.

A release to a railroad company by a landowner, and the granting of a right of way, has been held to close the account between the landowner and the railroad company so that no subsequent action can be brought: Hoffeditz v. R. R., 129 Pa. 264; Updegrove v. R. R., 132 Pa. 540.

Wiley's testimony is inadmissible under R. R. v. Patterson, 107 Pa. 461. And Morgan's, under Ry. v. Vance, 115 Pa. 325.

*James Fitzsimmons, H. H. Swaney* with him, for appellee.—This case is ruled by Fisher v. Baden Gas Co., 138 Pa. 301.

The court below carefully withdrew from the jury the right to consider the advantages or disadvantages relating to the land taken under the first appropriation, and limited their investigation to the last land taken and to the advantages or disadvantages accruing to the appellants by reason of the appropriation of the last lands and of the building of the bridge in accordance with the last appropriation.

OPINION BY MR. JUSTICE McCOLLUM, January 30, 1893 :

In 1889 the appellee appropriated about one third of an acre of appellant's land for an approach to its bridge across the Monongahela river from a point at the foot of Riverton street in the borough of McKeesport to a point in Mifflin township opposite to said Riverton street. The land so appropriated was

in Mifflin township, fifty feet in width, and extended from low water mark on the river to the right of way of the Pittsburgh, Virginia & Charleston Railroad. The damage, occasioned by this appropriation, was duly ascertained and paid. In fixing the amount of the damages, the advantages to appellant's property from the location and construction of the bridge were shown and properly considered. When the work of constructing the bridge was well advanced, it was agreed between the appellee and the railroad company that, in order to avoid the inconvenience and danger of a crossing at grade, the bridge and approach on the Mifflin side should be raised to a sufficient height to allow an elevated crossing; and to carry out this agreement an extension of the Mifflin approach and an appropriation of more land of the appellants became necessary. This litigation comes from the second or further appropriation of the appellant's land to complete the approach in accordance with the plan for the elevation and extension of it, and the principal question to be determined is whether the benefits resulting to the appellant's property from the construction of the bridge may be considered in the adjustment of the damages caused by the change in the approach.

The appellant's contention is that in ascertaining such damages the only benefits or advantages to be regarded are those created by the change which necessitated the second appropriation, and that in this case the rule is the same as it would be if the bridge and its approaches had been completed according to the original plan, and opened to travel before the change in the Mifflin approach was made. We think this contention is sound because the special benefits to appellant's land from the construction of the bridge and its approaches, as originally planned, were settled for in the proceedings for the assessment of the damages caused by the first appropriation. The appellants having once paid for these benefits in reduction of their claim for damages cannot be charged with them again. The lands appropriated are contiguous and parts of the same tract. The benefits which this tract would have received by the completion of the bridge and its approaches in conformity with the first plan were allowed in the former proceeding, and are, like the damages recovered in it, res judicata. It follows that in this case the inquiry should have been limited to the damages

sustained and the benefits conferred by the change in the Mifflin approach and the appropriation made necessary by such change. The appellant's third, fourth, fifth and sixth points fairly presented this view of the case, but the answers to them were unsatisfactory and misleading. It is true the learned court below affirmed the points, but the affirmance of each was immediately connected with an explanation which amounted to a substantial denial of the point. The fault discernible in the answers is that they allowed the jury to take into consideration the benefits conferred by the bridge, instead of limiting the inquiry to the benefits resulting from the elevation and extension of the Mifflin approach to it. This was manifest error which was not cured by the general charge. For the reasons already stated evidence of benefits arising from the construction of the bridge was inadmissible. The first, second, third, fourth, sixth, seventh, eighth and eleventh specifications are sustained.

As the appellants have not printed Wylie's testimony in chief we cannot intelligently pass upon the objections to the questions complained of on his cross-examination. The legitimacy of the latter depends on the nature and character of the former. It does not follow because the answers to these questions would not be admissible as independent evidence on the subject of damages that the cross-examination was improper. The questions and answers may have been pertinent in testing the intelligence and integrity of the witness in making the estimates to which he had testified in chief. The fifth specification is overruled.

We cannot say that Joseph Martin was incompetent to testify to the market value of the property. He had known it ten or fifteen years, and knew of sales of like property in that neighborhood. It is not the subject-matter of his testimony, but the ruling of the court that he was qualified to give it, which is complained of, and as we are of opinion that he was competent we overrule the ninth and tenth specifications.

The excerpt from the charge which constitutes the error complained of in the twelfth specification is justly subject to the same criticism as the answers to the points already considered, and for that reason the specification is sustained.

Judgment reversed and venire facias de novo awarded.