Holmes Petition.

Argued April 11, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Francis A. Barry,* Assistant County Solicitor, with him *Nathaniel K. Beck,* County Solicitor, and *John W. Manula,* Assistant County Solicitor, for appellant.

*Ralph D. McKee, Jr.,* with him *Alter, Wright & Barron,* for appellee.

OPINION BY WRIGHT, J., June 11, 1957:

At No. 109 July Term 1950, in the Court of Common Pleas, the County of Allegheny petitioned for the appointment of viewers to determine and award damages

to the owners of property taken, injured or destroyed by the widening of West Fifth Avenue in the City of McKeesport. Lewis W. Holmes was the owner of a lot fronting 30 feet on the southerly side of West Fifth Avenue, on which lot was erected a two-story frame dwelling fronting on the Avenue. At the rear of the lot, adjoining an alley, was a one-story frame cottage. The lot was designated in the viewers proceedings as V-170. The plans show that the lot had a depth of 109 feet, and a total area of 3236 square feet. As a result of the street widening, 10 feet of the front of the lot was taken for right-of-way. In addition, 1136 square feet was occupied for slope easement, with the top of the slope running from a point on the westerly sideline of the lot 35.14 feet south from the right-of-way line to a point on the easterly sideline of the lot 40.57 feet south from the right-of-way line. The slope line ran through the middle of the dwelling fronting on West Fifth Avenue, resulting in its total demolition. The cottage at the rear of the lot, 60 feet removed from the top of the slope line, remained standing. On May 2, 1950, the Board of Viewers viewed the property, and on June 12, 1950, held a hearing. On July 14, 1950, the viewers filed a report in which Holmes was awarded the sum of $8,-000.00 as his damages. It was therein stated that the viewers had "estimated and determined the damages for all property taken, injured or destroyed". This report was confirmed absolutely, and no appeal therefrom was taken.

On or about December 5, 1950, earth commenced to slide on the remaining portion of the Holmes lot, resulting in damage to the small house at the rear. On August 26, 1952, Holmes filed a petition at No. 1821 October Term, 1952, asking for the appointment of viewers to ascertain and award compensation to him for damages suffered "by reason of the removal of the support

necessary to the premises remaining".[1] The petition averred that the resultant "injury and damage to said premises was the necessary and unavoidable consequence of the non-negligent performance of said construction". The petition specifically pleaded the proceedings before the Pennsylvania Public Utility Commission wherein the original improvement was authorized, and also the proceedings before the Board of Viewers at No. 109 July Term 1950. The Common Pleas Court granted the prayer of the petition and appointed viewers, whereupon the County moved to vacate the appointment for the reasons that (1) having already prosecuted a claim for damages at No. 109 July Term 1950, the petitioner was barred from asserting a claim "averred to have been a consequential result of the same act of eminent domain"; (2) the award at No. 109 July Term 1950, was conclusively presumed to include all damages; and (3) no Board of Viewers had jurisdiction. Upon presentation of this motion, a rule to show cause was granted. An answer was filed in which it was averred that the injury was not a consequential result of the same act of eminent domain, but "was the necessary and unavoidable consequence of the non-negligent performance of the construction"; that the injury complained of was "too speculative and remote" at the time of the original proceedings to have been a proper element of damage therein; that "the injury to lateral support was not contemplated"; that "no compensation has ever been made for the injury to this property right"; and that the Board of Viewers had jurisdiction to hear and determine the claim. After argument, the court en banc discharged the rule. An appeal was taken to the Supreme Court under the Act of March 5, 1925, P. L. 23, 12 P.S.

---

[1] Holmes died on September 6, 1952, and his executors have been substituted as petitioners in the present proceeding.

672, challenging the jurisdiction of the court below. This appeal was dismissed and the record was remitted with a procedendo.[2]

Following the remission of the record, hearings were conducted by the Board of Viewers, and a report was subsequently filed awarding to the Holmes Estate the sum of $3,000.00.[3] Exceptions were filed by the County, and argued before the court en banc. On December 5, 1956, the opinion of the court was filed, together with an order dismissing the exceptions. Pursuant to a prae-cipe filed December 15, 1956, the Prothonotary entered a decree of absolute confirmation. The ensuing appeal by the County to the Supreme Court has been remanded to us for hearing and determination.

We are clearly of the opinion that the decision of the lower court must be reversed. After correctly set-ting forth the "doctrine often repeated" that a property owner's whole claim, both for the land taken in the im-provement of a street and for the cutting and grading thereof, must be submitted at one and the same time, the opinion below states: "This court is not in agree-ment with that principle of law, because it is an errone-ous assumption as to the rights acquired by the pur-chase or condemnation of property for public use". The theory of the lower court is that a municipality does not in a condemnation proceeding acquire "the right of the owner of the remainder of the tract to have the adjacent

---

[2] "It is abundantly clear, therefore, that, as previously stated, the court had *jurisdiction* to appoint the Board of Viewers. Whether, under the particular facts and history of the case, the court should have made the appointment and whether the Holmes Estate shall ultimately be found entitled to recover the damages now claimed by it, is not before us on this appeal": *Holmes Petition*, 383 Pa. 99, 117 A. 2d 704.

[3] In addition there was allowed to L. F. Savage, a witness for the petitioners, the sum of $200.00 for engineering services.

soil supported". It is reasoned as follows: "Where land is taken for public use, the right of support for the adjoining soil is not taken, but the owner should retain such rights and the works must be constructed so as not to interfere with that right, or further compensation must be made. A property owner should not be precluded from recovering damages for injury to his property arising out of a condition not ascertainable at the time award was made, and which could not possibly have been considered as an item of damage even if alleged, since the condition giving rise to claim of damage was non-existent at the time of claim and could not be recognized because of its speculative, remote and unforeseeable aspects". This reasoning is contrary not only to the law, but also to the facts[4] in the instant case.

In *Barclay-Westmoreland Petition*, 173 Pa. Superior Ct. 504, 98 A. 2d 395, the County Commissioners of Allegheny County adopted a resolution to relocate, widen and change the grade of Moss Side Boulevard in Patton Township. We restated the established rule in Pennsylvania as follows: "The present case, however, primarily involved a relocation. So far as appellant's property was concerned, there was direct damage in the taking of 3.08 acres of land for the road, plus 1.60 acres for the slopes of cuts and fills. The consequential damage for the change of grade was inherent in the construction of the highway. Where a street or highway is laid out, the property owner must submit his whole claim for the damage caused by the opening and grading thereof, embracing consequential as well as direct injuries". It is

---

[4] Petitioners' engineer, L. F. Savage, testified that the hillside in question had been "a sliding proposition" for over fifty years. It was certainly not "speculative, remote and unforeseeable" that further, and probably more severe, slides would occur as a result of the new cut.

beyond question that the original award in the case at bar must be held to have included consequential damages. See *Moyer v. Commonwealth,* 183 Pa. Superior Ct. 333, 132 A. 2d 902.

In *Beach v. Scranton,* 25 Pa. Superior Ct. 430, the City of Scranton graded a street in front of Beach's property so as to cause damage to the lot. Viewers were appointed and damages were awarded and paid. Beach subsequently brought action in trespass for injuries caused by an additional flow of water on the land. It was held that since the injury alleged was the direct, immediate and unavoidable result of the execution of the plan under which the grading of the street was completed, there could be no recovery. The opinion in that case contains the following pertinent language: "This was an injury for which the plaintiff was entitled to recover, and which she must be presumed to have recovered, in the proceeding before the viewers; it was included in the award of damages which she there obtained". Similarly, in *Dettra v. Philadelphia,* 245 Pa. 139, 91 A. 247, it was held that all damages to abutting land consequent upon the improvement of a street shall be assessed in a single proceeding. The rule was followed in *McGunnegle v. Pittsburgh & L. E. R. R.,* 269 Pa. 404, 112 A. 553, where it was held that a judgment entered in a condemnation proceeding is conclusive not only as to matters directly litigated and decided, but also as to all matters of recovery and defense which might have been presented and decided.

The cases relied upon by the court below, and in part by appellees, may be readily distinguished. *Pusey v. Allegheny,* 98 Pa. 522, actually involves an application of the settled rule. Mr. Justice Gordon said: "From this it follows, that the property owner not only may, but must, submit his whole claim to the viewers and to the court, and that part thereof which he neglects so to sub-

mit must be taken to have been waived, and no second process can be had for its recovery". In *Clark v. Philadelphia,* 171 Pa. 30, 33 A. 124, a street had been opened at an established grade, and the property owner waived damages. It was held that he had not waived the damages resulting from a separate and subsequent change of grade. See also *Jones v. Bangor Borough,* 144 Pa. 638, 23 A. 252. Similarly, in *Rodgers v. Philadelphia,* 181 Pa. 243, 37 A. 339, recovery was allowed for a separate and distinct change of grade made several years after the opening of a street. However, Mr. Justice FELL stated : "The claim of a property owner for the opening of a street must be asserted as an entirety, and if any part of it be omitted he is estopped from afterward setting it up. He must submit the whole claim, and no second process can be had for a part of it. The value of the land taken, the condition of what remains as affected by the lines of the street, and the elevation or depression of the natural surface, are elements in the calculation, but they are not distinct claims". In *McElheny v. Bridge Co.,* 153 Pa. 108, 25 A. 1021, additional land was taken because of a change in the construction plans. In *Reid Creamery & Dairy Co. v. Philadelphia,* 274 Pa. 251, 118 A. 11, additional damage was caused by the extension of the slope of fill beyond the lines fixed by the condemning ordinance. In *Shenk Co. v. Erie,* 352 Pa. 481, 43 A. 2d 99, there was a second condemnation some thirty years after the first.

In conclusion, not one of the many Pennsylvania appellate cases which we have examined upholds the decision of the court below. To the contrary, they all support the contention of the County that the damages presently claimed were included in the first award. Having been adjudicated in the original proceeding, they cannot here be made the subject of a second claim. No individual or municipality "should be vexed twice for the

same cause". See *Burke v. Pittsburgh Limestone Corp.,* 375 Pa. 390, 100 A. 2d 595.

The order of the court below is reversed, and the decree of absolute confirmation is vacated.

---

DISSENTING OPINION BY ERVIN, J.:

I respectfully dissent from the majority opinion. It is true that there are a number of decisions by the appellate courts of this State which hold that the original award in an eminent domain proceedings is presumed to have included consequential damages in addition to damages for a direct taking. I am unable to agree with the reason given in support of this principle. The reason seems to be that "No individual or municipality 'should be vexed twice for the same cause'." On the other hand, it seems to me to be extremely unfair and contrary to the Constitution to prohibit an owner from securing damages for an injury actually suffered. For a jury of view to fix damages for an injury which has not occurred and which may never occur might unduly penalize the municipality. To permit a jury of view to assess damages before the happening of the event would permit them to indulge in the rankest kind of speculation. How could a jury of view intelligently assess damages for something which had not occurred. It would be more reasonable for a second jury of view to assess the damages if and when such consequential damages occurred. Such a rule would prevent the payment of consequential damages by a municipality which had not and might not ever occur and, on the other hand, would allow to an owner damages intelligently assessed if and when they did occur. If the law of Pennsylvania needs changing so that justice may prevail, I would change it.

HIRT, J., joins in this dissent.